## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-14127-CIV-MOORE/MAYNARD

**KRIS HELTON,**

      Petitioner,

**v.**

**FLORIDA COMMISSION ON OFFENDER
REVIEW** and **MARK S. INCH,** as Secretary,
Florida Department of Corrections,

      Respondents.

_____/

### REPORT AND RECOMMENDATION ON PETITION FOR
### A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 (DE 1)

Petitioner Kris Helton ("Petitioner"), a state prisoner at Marion Correctional Institution in Ocala, Florida, filed a Petition for Writ of Habeas Corpus under 42 U.S.C. § 2241 challenging his Presumptive Parole Release Date ("PPRD") of August 1, 2046.  DE 1.  Petitioner contends that his 2046 PPRD is significantly harsher than a similarly situated prisoner convicted of indistinguishable offenses.  *Id.* at 6.  Petitioner thus brings a "class of one" equal protection challenge to his 2046 PPRD.  *Id.*

This matter was referred to me for consideration and report pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida.  DE 5.  The record consists of the Petition, Memorandum of Law in Support and Appendix (DE 1; DE 6 and DE 14), Respondent Florida Commission on Offender Review's ("Florida Commission's") Response (DE 15), and Reply (DE 18).  Respondent Mark S. Inch, Secretary of the Florida Department of Corrections did not file a response, and the time to do so has now passed.  Having reviewed the

record, and with the benefit of oral argument pursuant to a hearing held on April 28, 2022, I respectfully **RECOMMEND** that the Petition be **DENIED**.

## PROCEDURAL HISTORY

On March 17, 1992, a jury found Petitioner guilty of the murder of his fiancée's 22-month-old child.  DE 6 at 2; *Helton v. Singletary*, 85 F. Supp. 2d 1323, 1324-25 (S.D. Fla. 1999), *aff'd sub nom. Helton v. Sec'y for Dep't of Corr.*, 233 F.3d 1322 (11th Cir. 2000), *reh'g granted and opinion vacated*, 257 F.3d 1262 (11th Cir. 2001), and *opinion superseded on reh'g*, 259 F.3d 1310 (11th Cir. 2001), and *rev'd sub nom. Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310 (11th Cir. 2001).  The Indictment charged Petitioner with First Degree Murder, specifically that Petitioner "did unlawfully, from a premeditated design, to effect the death of a human being, to wit: [minor victim], age 22 months, did kill by inflicting blunt trauma to the head of [minor victim], in violation of Florida Statute 782.04(1)(a)." DE 14-4 at 12.  According to the verdict form, the jury found Petitioner "guilty as charged in the indictment of murder in the first degree, in violation of Florida Statute 782.04." DE 14-4 at 124.  Petitioner was sentenced to a term of natural life with a 25-year minimum mandatory sentence.[1] DE 14-4 at 10.

Florida's Third District Court of Appeal unanimously reversed the conviction, but subsequently withdrew that reversal and affirmed the conviction in July 1994.  *Helton v. State*, No. 92-725, 1993 WL 152198 (Fla. 3d DCA May 11, 1993), *opinion withdrawn and superseded on reh'g*, 641 So. 2d 146 (Fla. 3d DCA 1994) (citing withdrawn opinion as *Helton v. State*, 18 Fla. L. Weekly D1215 (Fla 3d DCA May 11, 1993)); *Singletary*, 85 F. Supp. 2d at 1325.  Petitioner then pursued his post-conviction remedies, prevailing in the Southern District of Florida, which ruled

---

[1] Chapter 94–228, section 1, Laws of Florida amended Florida's sentencing laws to eliminate the possibility of parole for first degree murder convictions effective May 25, 1994.  *See Boone v. Fla. Comm'n on Offender Rev.*, No. 8:18-CV-214-T-35SPF, 2020 WL 7695645, at *1, n. 1 (M.D. Fla. Dec. 28, 2020).  The amendment is not applicable to Petitioner because his offense was committed prior to the effective date of the amendment.

that he had been denied effective assistance of counsel at trial. *Singletary*, 85 F. Supp. 2d at 1327-28, 1337. The Eleventh Circuit initially affirmed the decision. *Helton v. Sec'y for Dep't of Corr.*, 233 F.3d 1322, 1326-27 (11th Cir. 2000), *reh'g granted and opinion vacated*, 257 F.3d 1262 (11th Cir. 2001), and *opinion superseded on reh'g*, 259 F.3d 1310 (11th Cir. 2001). Upon rehearing, however, the Eleventh Circuit vacated the affirmance, finding the petition procedurally barred because of its untimely filing. *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1315 (11th Cir. 2001).

## **PAROLE HISTORY**

Florida Statute § 947.172 sets forth the procedure for establishment of an inmate's PPRD. First, a hearing examiner conducts an interview with the inmate in accordance with the provisions of Fla. Stat. § 947.16. After the interview, the hearing examiner recommends a PPRD for the inmate to a panel of at least two commissioners. Fla. Stat. § 947.172. The panel then reaches agreement on the PPRD. *Id.* If the panel cannot agree, the Commission chair or any other commissioner designated by the chair casts the deciding vote. *Id.* An inmate must be notified of the Commission's decision within 90 days of the initial interview. *Id.*

In accordance with this procedure, Petitioner was interviewed by a hearing officer on February 19, 2016. The hearing officer recommended a PPRD of August 1, 2026. DE 14-4 at 15-16. The recommendation was based on the matrix time range applicable to Petitioner's offense (180 months) plus an increase of 240 months based on the vulnerable victim aggravator due to the victim being just 22 months old. *Id.* at 16.

On May 25, 2016, a panel of commissioners met and established Petitioner's PPRD as August 1, 2046. DE 14-4 at 18-19. The decision was based on the matrix time range applicable to Petitioner's offense (180 months), plus an increase of 240 months based on vulnerable victim,

and an additional increase of 240 months because "the offense was particularly brutal and heinous" in that "the victim sustained over seventy (70) abrasions, had multiple contusions, and a fractured skull per the autopsy report." DE 14-4 at 18-19.  A total of 660 months was applied to Petitioner's "Time Begins" date of August 1, 1991 to establish the PPRD of August 1, 2046.  *Id.*

Petitioner sought administrative review of the PPRD decision on July 15, 2016.  DE 14-4 at 22-181.  On August 24, 2016, the Commission considered Petitioner's appeal but found no reason to modify the assigned PPRD.  DE 14-4 at 183.  Petitioner is set to be re-interviewed in December 2022.  *Id.*

## STATE COURT MANDAMUS LITIGATION

On July 13, 2018, Petitioner filed an amended petition for writ of mandamus challenging application of the two aggravating increases based on vulnerable victim and brutal and heinous crime.  DE 14-1.  Petitioner also made an equal protection challenge to his PPRD.  *Id.*  Specifically, Petitioner compared his case to that of another parole eligible inmate, Catherine Freeze, who was convicted of the murder of her own child and aggravated child abuse.  *See Freeze v. State*, 553 So.2d 750 (Fla. 2d DCA 1989).

On May 3, 2019, the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida denied Petitioner's mandamus petition.  DE 14-7.  Petitioner appealed the Circuit Court's denial of his mandamus petition.  He argued that the trial court erred in not finding the Florida Commission wrongly applied the two aggravators.  DE 14-8 at 2.  He also argued that the trial court applied an incorrect legal standard in addressing his "class of one" equal protection claim.[2] *Id.* at 20-25.

---

[2]  Of note, in his amended petition for writ of mandamus, Petitioner did not initially articulate a "class of one" equal protection claim; rather, he asserted that the Florida Commission treated him "far more harshly than others in similar circumstances," he provided the example of inmate Freeze, and he cited caselaw discussing equal protection claims in the context of invidious discrimination.  DE 14-1 at 16-18 (citing to *Thomas v. Ga. State Bd. of Pardons & Paroles*,

On March 6, 2020, Florida's First District Court of Appeal denied Petitioner's appeal without a written opinion.  DE 14-13.  Petitioner filed the pending petition for writ of habeas corpus in federal court on April 27, 2020.  DE 1.

## STANDARD OF REVIEW

Petitioner filed his petition under 28 U.S.C. § 2241; however, the Petition "is subject to both § 2241 and § 2254."  *Thomas v. Crosby*, 371 F.3d 782, 787–88 (11th Cir. 2004) (a petitioner challenging a parole decision is subject to both statutes).  In *Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003), the Eleventh Circuit explained the history of, and overlap between, habeas petitions filed under §§ 2241 and 2254.  The Court clarified that "the writ of habeas corpus is a single post-conviction remedy principally governed by two different statutes," that is, §§ 2241 and 2254.  *Id*. at 1059.  "The difference between the statutes lies in the breath of the situations to which they apply."  *Id*.  Section 2241(c)(3) provides that a writ of habeas corpus may issue to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States," while section 2254(a) applies to a subset of that group, that is, a prisoner "in custody *pursuant to the judgment of a State court*" who is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  *Id*. (emphasis in original).  Thus, a petition by a state prisoner serving a sentence pursuant to a judgment of a state court is subject to both § 2241 and § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Allowing otherwise would "thwart Congressional intent."  *Id*. at 1069 (quoting *Coady v. Vaughn*, 251 F.3d

---

881 F.2d 1032, 1033 (11th Cir. 1989) (construing *pro se* petitioner's claim as alleging that the parole board made "parole decisions based on the unconstitutionally discriminatory factors of race and wealth") and *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932 (11th Cir. 1986) (contending that petitioner needed to establish, among other things, "invidious discrimination" based on a constitutionally protected interest such as race, etc.)).  Nonetheless, the Florida Commission argued in response that Petitioner failed to establish a class of one equal protection claim. DE 14-3 at 20 (citing *Thorne v. Chairperson, Fla. Parole Comm'n*, 427 F. App'x. 765, 771 (11th Cir. 2011)).  Petitioner then argued in his reply brief that the Florida Commission "concede[d] that Mr. Helton can establish a class of one claim by showing that he was intentionally treated differently from others similarly situated."  DE 14-5 at 8 (internal quotations and citation omitted).

480, 485 (3d Cir. 2001)).  It would mean Petitioner could bypass AEDPA requirements by proceeding under § 2241 "because no state prisoner would choose to run the gauntlet of § 2254 restrictions when he could avoid those limitations simply by writing § 2241 on his petition[.]" *Id.* at 1060-61.  Although Petitioner styles his petition as a request for habeas relief under § 2241, his petition is also subject to the narrower restrictions of § 2254.

The issuance of a writ of habeas corpus under § 2254 is limited by the purpose of AEDPA, which is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction."  *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted).  Indeed, Section 2254 applies at the end of a greater course of judicial review.  *Baker v. Fla. Comm'n on Offender Rev.*, No. 3:16CV420/LAC/EMT, 2017 WL 4532830, at *3 (N.D. Fla. Aug. 31, 2017), *report and recommendation adopted*, No. 3:16CV420/LAC/EMT, 2017 WL 4518692 (N.D. Fla. Oct. 9, 2017) (stating that a petitioner seeking habeas relief must first afford state courts the opportunity to review and address alleged violations of prisoners' federal rights).  Therefore, because AEDPA is based on the principle that "state courts are adequate forums for the vindication of federal rights," it establishes a formidable barrier to state prisoners seeking federal habeas relief.  *See Downs v. Sec'y, Fla. Dep't of Corrs.*, 738 F.3d 240, 256 (2013).

Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.A. § 2254.

Petitioner must therefore establish that the state court's adjudication of his equal protection claim was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. The phrase "contrary to" means that the state court decision contradicts the Supreme Court on a settled question of law or holds differently than the Supreme Court on a set of materially indistinguishable facts. *See Downs*, 738 F.3d at 257. The phrase "clearly established Federal law" refers to the holdings, as opposed to the *dicta*, of the Supreme Court's opinions in existence when the state court decided the post-conviction claims. *See Downs*, 738 F.3d at 256-57 (adding that it includes a binding circuit court decision that says whether the particular point in issue is clearly established Supreme Court precedent). Section 2254(d)(1) tests the legal correctness of the state court's decision, but it does so through a highly deferential lens. The degree of error must be substantial and beyond dispute. The state court's decision survives Section 2254(d)(1) review so long as some fair-minded jurists could agree with the state court, even if others might disagree. *See Downs*, 738 F.3d at 257. Section 2254(d)(2) asks whether the state court based its denial "on an unreasonable determination of the facts" based on the evidence before it at the time. As with the Section 2254(d)(1) legal analysis, a reviewing federal court is to consider the state court's findings of fact through a deferential lens. The state court's finding of fact is not unreasonable just because the reviewing federal court would have reached a different finding of fact on its own. So long as reasonable minds might disagree about the finding of fact, the state court's finding stands. *See Downs*, 738 F.3d at 257. Indeed, the state court's fact determinations are presumed to be correct. Section 2254(e)(1) places the burden on

the Petitioner to rebut that "presumption of correctness by clear and convincing evidence." Even if the state court did make a factual error, its decision still should be affirmed if there is some alternative basis sufficient to support it. *See Pineda v. Warden*, 802 F.3d 1198 (11th Cir. 2015).

Section 2254(d) creates a standard of review that is highly deferential to the state court's denial of the claim. The reviewing federal court must give the state court the benefit of the doubt and construe its reasoning towards affirmance. *See Lynch v. Sec'y, Fla. Dep't of Corrs.*, 776 F.3d 1209 (11th Cir. 2015). To warrant relief under Section 2254(d), the Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This is the degree of error the Petitioner must show before this Court may override the state court's decision.

## EXHAUSTION

Since the petition falls under sections 2254 and 2241, two types of exhaustion apply in this case.

First, under § 2254(b), a state prisoner is precluded from seeking federal habeas relief under § 2254 before he has fairly presented his constitutional claims in state court and exhausted available state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 844 (1999); Title 28 U.S.C. § 2254(b). Both the factual substance of a claim and the federal constitutional issue, itself, must have been expressly presented to the state court to achieve exhaustion for purposes of federal habeas corpus review. *Baldwin v. Reese*, 541 U.S. 27 (2004). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. *O'Sullivan*, 526 U.S. at 845. Respondent concedes that Petitioner has exhausted his state court remedies. DE 15 at 5.

Second, a § 2241 petitioner generally "must exhaust available administrative remedies before [he] can obtain relief in federal court." *Shorter v. Warden*, 803 F. App'x 332, 336 (11th Cir. 2020). Since this requirement is not jurisdictional, a court need not inquire into administrative exhaustion on its own. *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015). Here, Respondent has not asserted administrative exhaustion as a defense and it appears from the record that Petitioner exhausted his administrative remedies by filing an appeal with the Commission, which was denied. DE 14-4 at 22-183. Therefore, this Court accepts the Petition as having satisfied the exhaustion requirement.

## **TIMELINESS**

The Petition is subject to a one-year statute of limitations. *Peoples v. Chatman*, 393 F.3d 1352, 1353 (11th Cir. 2004) (habeas petition filed by prisoner challenging decision of parole board governed by § 2241 and § 2254, which means one year statute of limitations applies). Respondent concedes that the Petition is timely filed. DE 15 at 5. Therefore, this Court accepts the Petition as having been timely filed.

## **DISCUSSION**

It is well settled that federal habeas relief is available only to correct constitutional injury. 28 U.S.C. § 2241(c)(3); 28 U.S.C. § 2254(a). *See also Eselle v. McGuire*, 502 U.S. 62, 67-68 (1991) (providing that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas relief); *Barclay v. Florida*, 463 U.S. 939, 958-59 (1983) (stating that "[m]ere errors of state law are not the concern of this court … unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution.") (citations omitted).

In Florida, decisions about parole are left to the discretion of the Florida Commission, and there is no constitutional right to parole. *Jonas v. Wainwright*, 779 F.2d 1576, 1577 (11th Cir. 1986). As the Court explained in *Staton v. Wainwright*, 665 F.2d 686, 688 (5th Cir. 1982), *cert. denied*, 456 U.S. 909 (1982):

> Much of the Florida statutory scheme [concerning parole] is written in mandatory terms. That language, however, is qualified by the exercise of the Commission's discretion. The setting of the presumptive parole release date and the decision whether that date is to become the effective parole release date are matters committed ultimately to the discretion of the Commission. Even if the inmate's conduct has been satisfactory, Florida law specifically grants the Commission the power to authorize the effective parole release date or to deny or delay release.
>
> Since the decision whether to release an inmate on parole is a matter committed to the discretion of the Commission without the mandate of statute, no entitlement to or liberty interest in parole is created by the Florida statutes.

*Staton*, 665 F.2d at 688; *Hunter v. Fla. Parole & Prob. Comm'n*, 674 F.2d 847, 848 (11th Cir. 1982) ("The former Fifth Circuit has held … that no liberty interest in parole was created by the Florida statutes. We agree.") (citing *Staton*, 665 F.2d 686)). Similarly, the Commission's setting of a PPRD does not implicate a liberty interest or invoke due process protection. *Damiano v. Fla. Parole and Prob. Comm'n*, 785 F.2d 929, 932 (11th Cir. 1986); *Walker v. Fla. Parole Comm'n*, 299 Fed. Appx. 900 (11th Cir. 2008) ("There is no liberty interest in the calculation of Florida's 'presumptive parole release date,' … because the ultimate parole decision is a matter of Commission discretion.").

Petitioner alleges that, in establishing his PPRD, the Florida Commission has treated him more harshly than inmate Freeze, who Petitioner argues was convicted of indistinguishable offenses. The Equal Protection Clause requires the government to treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Generally, to establish a classic equal protection claim, an inmate must demonstrate "that '(1) he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (*quoting Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). Yet, the Supreme Court has also recognized "class of one" equal protection claims where a plaintiff asserts that he was irrationally discriminated against on an individual basis, rather than as a member of a particular group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A petitioner can establish a "class of one" claim by showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. "To be 'similarly situated' the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (internal quotation marks and emphasis omitted).

"The burden of identifying similarly situated individuals is a heavy one." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002–03 (7th Cir.2004)). The Eleventh Circuit has emphasized that "when plaintiffs in 'class of one' cases challenge the outcome of complex, multi-factored government decisionmaking processes, similarly situated entities 'must be very similar indeed.'" *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) (citation omitted). "[W]hen dissimilar governmental treatment is not the product of a one-dimensional decision—such as a standard easement or a tax assessed at a pre-set percentage of market value—the 'similarly situated' requirement will be more difficult to establish." *Id*. at 1203. This is so because "at their heart, equal protection claims, even 'class of one' claims, are basically claims of discrimination." *Id*. at 1207. "To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with rigor.

'Different treatment of dissimilarly situated persons does not violate the equal protection clause.'"
*Id.* (citing *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir.1987)).

Petitioner argues that the Florida Commission treated him differently from inmate Catherine Freeze, who was convicted of murdering her 18-month-old child in 1986.  DE 14-4 at 208.  Ms. Freeze was given a PPRD resulting in 34 years of imprisonment while Petitioner was given a PPRD resulting in 55 years of imprisonment.  DE 6 at 5-8.

The Florida Commission calculates PPRDs using a four-step process.  DE 6 at 3; DE 15 at 2-3.[3]  First, the Florida Commission calculates a Salient Factor Score based on an inmate's prior criminal record.  DE 6 at 3; DE 15 at 2.  Here, Petitioner was scored with one point for a prior conviction, while Ms. Freeze was scored at zero.  DE 6 at 3; DE 15 at 2; DE 14-4 at 16, 18; DE 14-4 at 205.  The Salient Factor Score is a range; therefore, both Petitioner's score and Ms. Freeze's score was set at the range of 0-1.  DE 6 at 3, DE 15 at 2; DE 14-4 at 18-20, 205.  Second, the Florida Commission determines the Offense Severity Level which, for capital first degree murder, is Level 6.  DE 6 at 3; DE 15 at 2-3.  Here, both Petitioner and Ms. Freeze were convicted of first-degree-murder so both were assessed Level 6.  DE 6 at 2; DE 15 at 1, 11; DE 14-4 at 3, 18, 199, 205.  Third, the Offense Severity and Salient Factor Score are cross referenced using a grid to determine the applicable "Matrix Range" period of months.  DE 6 at 3; DE 15 at 3. The Florida Commission set both Petitioner and Ms. Freeze at the top of the Matrix Range; thus, the "Matrix Set" determination for both was 180 months.  *See* DE 6 at 3; DE 15 at 3; DE 14-4 at 18, 205.  Fourth, the Florida Commission considers aggravating or mitigating factors.  DE 6 at 4; *see also* DE 15 at 3.  Here, Petitioner received two aggravating factors: one for the victim being particularly vulnerable at 22 months old, which added 240 months, and one for a brutal and heinous offense,

---

[3] Both Petitioner and the Florida Commission reference § 947.172, Fla. Stat. and Fla. Admin. Code Rules 23-21.007 through 23-21.010 in explaining the procedure for establishing a PPRD.  DE 6 at 3-4; DE 15 at 2-3.

which added 240 months.  DE 14-4 at 18.  Ms. Freeze, however, received no aggravating factor

for committing a brutal and heinous offense despite the hearing examiner recommending 100

months for such an aggravator.  *Id.* at 205. Also, Ms. Freeze received 160 months, versus

Petitioner's 240 months, as an aggravator for her offense against a particularly vulnerable victim

of 18 months.  *Id.*

Petitioner summarizes the Florida Commission's treatment of himself and Ms. Freeze as

follows:

|  | **Ms. Freeze** | **Petitioner Helton** | **Difference** |
|---|---|---|---|
| Offense Severity | Level 6 | Level 6 | None |
| Salient Factor Score | 0-1 | 0-1 | None |
| Matrix Range | 120-180 months | 120-180 months | None |
| Matrix Set | 180 months | 180 months | None |
| Vulnerable Victim | 160 months | 240 months | 80 months |
| "Brutal and Heinous" | 0 months | 240 months | 240 months |
| Aggregated Total | **340 months** | **660 months** | **320 months** |

DE 6 at 6.

The Florida Commission responds that Petitioner's equal protection claim fails for two

reasons.  DE 15 at 10-13.  First, Petitioner fails to establish that he and Ms. Freeze are similarly

situated.  DE 15 at 10.  Specifically, the Florida Commission points out that Ms. Freeze was

convicted of two crimes (murder and aggravated child abuse), while Petitioner was convicted of

only one crime (murder); the nature of their criminal conduct was different; and the injuries their

victims suffered were different.  *Id.* at 11-12.  Second, even if Petitioner could demonstrate that he

is similarly situated to Ms. Freeze, the Florida Commission argues that a rational basis exists for

treating them differently.   DE 15 at 12-13.   According to the Florida Commission, unlike

Petitioner, Ms. Freeze murdered her child while trying to punish him, tried to obtain medical aid

for the child, and subsequently expressed remorse.  *Id.* at 13. In contrast, the injuries inflicted on

Petitioner's victim suggests a deliberate act, and the record suggests Petitioner attempted to conceal his crime.[4]  *Id.*  Therefore, the Florida Commission requests that Petitioner's claim be denied.  *Id.* at 16.

Petitioner replies that Ms. Freeze's additional conviction for aggravated child abuse does not matter and although the Florida Commission attempts to recast Ms. Freeze's crime as "a chiding gone awry," the jury concluded "beyond a reasonable doubt that the punishment was not motivated by educational purposes but rather by spite, ill will, hatred, and an evil intent."  *Id.* at 3 (quoting *Freeze v. State*, 553 So. 2d 750, 754 (Fla. 2d DCA 1989)).

In denying Petitioner's equal protection claim, the state court stated as follows:

Petitioner Helton's third claim is one of constitutionally prohibited disparate treatment by the Commission, where Petitioner Helton alleges that he was intentionally treated differently from one other similarly situated parole eligible

---

[4] Respondent cites to *Helton v. State*, 641 So. 2d 146, 150 (Fla. 3d DCA 1994):

When the house was inspected after the child's death, two items were observed which suggested that the real wrongdoer had *tried to create an appearance that the incident was an accident*. At the time the couple went to bed, there was a full pitcher of Kool-Aid on the bottom shelf of the refrigerator. After the child's body was discovered, the pitcher was found in front of the refrigerator, lying on its side. Kool-Aid had been spilled all over that area of the kitchen floor.

Upon examining the child's room, it was found that the side of the crib was in the "down" position. This created an appearance that the side of the child's crib had come down, that the child had left the bed and gone to the kitchen, that the child had attempted to get a drink of Kool-Aid and dropped the pitcher, and that the child then somehow had opened the front door and gone outside.

Upon study of the kitchen area, however, the police officers found that there were no splashes of Kool-Aid on any vertical surface, even though splash marks would have been expected had a full pitcher been dropped. The child was wearing pajamas with long pantlegs. There was no Kool-Aid anywhere on the child's pajamas, or on the child's hands or feet. The state argued that the Kool-Aid was poured out on the floor after the child was killed, in order to create a scenario that would suggest the child went from crib, to kitchen, to front porch, to a fatal accident.

About two weeks before the death, a part of the child's crib broke which helped hold the side of the crib in place. Ms. Gunderson[, the Victim's mother,] had reattached that portion of the crib using a plastic-coated wire. The side of the crib had held securely for the two week period, and Ms. Gunderson testified that the wire was in place and securely fastened when she went to bed. Upon examination after the child was found, the wire had been dislodged, which would allow the side of the crib to come down. One possible explanation would have been that the child dislodged the wire, but an adult who knew how the crib side was fastened could have done the same thing.

*Id.* (emphasis added).

prisoner and that there is no rational basis for the difference in treatment. As evidence of the disparate treatment, Petitioner Helton cites to the case of one other parole eligible prisoner: Ms. Freeze, whose PPRD assessment by the Commission in October of 2009 was substantially shorter than Petitioner Helton's.

"To establish an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). This claim is denied. Petitioner Helton simply has not made the required showing that he is similarly situated with other offenders who have received more favorable treatment, including the only other case cited to that of Ms. Freeze. Nor has Petitioner Helton argued or demonstrated that the discriminatory treatment was based upon some constitutionally protected interest. Petitioner Helton has failed to meet the burden required to present a claim the Commission has unconstitutionally deprived him of the equal protection of the laws.  Therefore, this claim is denied.

DE 6 at 5-6; DE 14-7 at 6.

Petitioner argues that the state court erred in requiring him to establish invidious discrimination based on a constitutionally protected interest under *Jones v. Ray*.   I agree given the availability of a 'class of one' equal protection claim, which does not require proof of invidious discrimination.

Yet, Petitioner has failed to establish that the state court's adjudication of his equal protection claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  That is because under either a 'class of one' or invidious discrimination theory, the first step requires Petitioner to establish that he and the identified comparator – here, Ms. Freeze—are "*prima facie* identical in all relevant respects." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).  Petitioner has not done this.   The manner in which Petitioner and Ms. Freeze murdered their victims is different. According to the Indictment, hearing officer's report, and Commission's decision, Petitioner killed his victim by "inflicting blunt trauma" to the head of a 22-month-old child.  DE 14-2 at 9; DE 14-2 at 2 ("The injury was consistent with the child either being kicked or stomped in the head.").

The child's mother – Petitioner's girlfriend – woke to find her child outside lying in the dirt. DE 14-2 at 2. The child sustained over 70 abrasions, had multiple contusions and a fractured skull, and died of severe head injuries. *Id.* at 2, 5. Conversely, inmate Freeze shook her 18-month-old child because the child began crying and bit her while Freeze was arguing with her boyfriend. DE 14-4 at 208. Freeze shook the child until he began to vomit up a piece of pizza he had just eaten. *Id.* When the child went limp, she tried to revive him by hitting him on the back to dislodge the pizza and splashing water on him. *Id.* She then sent her boyfriend's 8-year-old son to the manager's office to get help. *Id.* The child was taken to the hospital but ultimately died from Shaking Child Syndrome. *Id.* During her parole interview, Freeze said "she lives with what happened everyday of her life" and "if she had the education she does now, she would have understood what she did was wrong." *Id.* at 209. These differences show Petitioner and inmate Freeze are not similarly situated when it comes to the brutal and heinous nature of their crimes. The record suggests Petitioner inexplicably kicked and/or stomped a child's head in the middle of the night and left the child outside in the dirt. In contrast, inmate Freeze shook a child in a manner that caused death, but also tried to revive the child and tried to find others to assist him. Given this significant difference, the two inmates are not similarly situated, and Petitioner fails to state a class of one equal protection claim.

Petitioner points out that when Freeze's victim got to the hospital doctors "observed that he was badly bruised" and medical evidence showed the child "had bruises on virtually every portion of his body" which "could only have been produced if the child had been struck many times and occasionally with great force." DE 6 at 5 (citing *Freeze v. State*, 553 So.2d 750, 752 (Fla. 2d DCA 1989)). But this does not make the two cases identical in all relevant respects. Indeed, it points to an additional relevant difference between the two cases. Freeze was convicted

of two crimes (murder and aggravated child abuse) occurring over apparently different time frames.  As described by the Second District Court of Appeal in Freeze's case:

> At her trial, a jury determined that Ms. Freeze had repeatedly and severely beaten her eighteen-month-old son, Kenny, during the days following Christmas, 1985, and thus was guilty of aggravated child abuse.  Additionally, the jury determined that she had violently shaken her young son on January 6, 1986 to punish him.  Because the shaking had resulted in the child's death on January 8, 1986, the jury convicted her of first degree felony murder.  The trial court entered judgment on both counts and sentenced Ms. Freeze to life imprisonment with a minimum mandatory sentence of twenty-five years on the felony murder charge, and to a concurrent sentence of fifteen years on the aggravated child abuse charge.

*Freeze*, 553 So.2d at 751.[5]  Petitioner, on the other hand, was convicted of one crime (murder) which, according to the Third District Court of Appeal, resulted in "two extremely severe skull fractures" that "would have required at least two strong blows with a blunt object[.]."  *Helton*, 641 So.2d at 148-49.  Additionally, '[a] portion of the child's brain had been pressed through one of the skull fractures, and the child had bled extensively between the skull and the scalp, resulting in the perception that the back of the child's head was soft." *Id.* at 149.  The "degree of force involved would have been equivalent to a fall from a three story building, or being struck by a car going 30 miles per hour." *Id.*

The injuries from Freezes' two offenses (for which she was sentenced separately) cannot be combined to establish that her crime was similarly situated to Petitioner's.  In addition, Freeze attempted to get help for the victim and expressed remorse while Petitioner attempted to cover up the crime.  *Helton*, 641 So.2d at 150.  These differences are relevant for purposes of discretionary parole decisions.  *See*, *e.g.*, *Thorne*, 427 F. App'x at 771 (prisoner bringing equal protection challenge to parole decision failed to show, among other things, "whether the other prisoners had

---

[5] The documentation of record indicates that inmate Freeze was given a consecutive sentence of 15 years on the charge of aggravated child abuse. DE 14-4 at 199, 201-02.

been convicted of multiple separate offenses").  The Eleventh Circuit has frequently noted that the "similarly situated" requirement must be rigorously applied in the context of "class of one" claims. *See Leib v. Hillsborough County Public Transp. Com'n*, 558 F.3d 1301, 1307 (11th Cir. 2009); *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008); *Griffin*, 496 F.3d at 1207.  Employing "[t]oo broad a definition of 'similarly situated' could subject nearly all state regulatory decisions to constitutional review in federal court and deny state regulators the critical discretion they need to effectively perform their duties." *Griffin*, 496 F.3d at 1203.  Where the challenged governmental decision is simple or one-dimensional (for example where the government is applying a single factor to a single issue), establishing "class of one" discrimination is easier.  But the determination of what is "brutal and heinous," for example, involves the discretionary application of various factors not amenable to a class of one determination. Petitioner has not shown to my satisfaction that he and Freeze are similarly situated in all relevant respects.

Accordingly, although the state court used the wrong standard for a "class of one" claim, an equal protection claim brought under any theory requires proof of a similarly situated comparator.  The state court did not err in finding that Petitioner had not made this threshold showing.  Thus, Petitioner fails to establish a basis for habeas relief.

Moreover, assuming *arguendo* that Petitioner and Freeze are similarly situated, Petitioner fails to establish that there is no rational basis for his longer PPRD compared to that of inmate Freeze.  Specifically, it does not appear that Freeze deliberately intended to kill her child by shaking him, while the evidence in Petitioner's case strongly suggests a deliberate act.  Moreover, as previously discussed, the evidence in Petitioner's case suggests he tried to conceal his crime while Freeze endeavored to get help and later expressed remorse.  These facts are germane to

determining when an inmate might be ready for parole and safe to return to the community.  *Id.*
Therefore, because a rational basis exists for Petitioner's disparate treatment relative to inmate
Freeze, I find that the Petition should be denied on these grounds as well.[6]

## CONCLUSION

Based on the foregoing, I find that Plaintiff's class of one equal protection claim lacks
merit.  Therefore, I conclude that Petitioner demonstrates no violation of his constitutional right to
equal protection to justify habeas relief. 28 U.S.C. § 2254(a).   Accordingly, I respectfully
recommend that the Petition for Writ of Habeas Corpus (DE 1) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this
Report and Recommendation within which to file written objections, if any, with U.S. District
Judge K. Michael Moore.  Failure to file objections timely shall bar the parties from a *de novo*
determination by the District Judge of an issue covered in the Report and Recommendation and
shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained
in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140,
149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

---

[6]As previously discussed, the Florida Commission aggravated Inmate Freeze differently than Petitioner for purposes
of the vulnerable victim enhancement.  Petitioner received a 240-month enhancement for his 22-month-old vulnerable
victim while Freeze received an enhancement of only 160 months for her 18-month-old.  Like an enhancement for a
brutal and heinous offense, various factors affect whether, and to what extent, a particular victim may be considered
"vulnerable".  Here, Petitioner was found to have murdered his child victim at night while others slept and the child
was alone with Petitioner.  Inmate Freeze, however, killed her child while shaking him in front of others. Thus,
Petitioner's victim – alone and without witnesses- was vulnerable in a way Freeze's victim was not.  These differences
demonstrate not only how the crimes are dissimilar, but also provide a rational basis for imposing a lengthier
vulnerable victim aggravator in Petitioner's case than in inmate Freeze's case.  Therefore, even if Petitioner and Freeze
were similarly situated in all relevant respects—which they are not—a rational basis exists for the Florida Commission
to apply the vulnerable victim enhancement to them differently.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 16th day of May, 2022.

SHANIEK MILLS MAYNARD
UNITED STATES MAGISTRATE JUDGE