UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:20-cv-14127-KMM

KRIS HELTON,

    Petitioner,
v.

FLORIDA COMMISSION ON OFFENDER
REFIES and MARK S. INCH, as Secretary,
REVIEW Department of Corrections,

    Respondents.
_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Petitioner Kris Helton's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ("Pet." or "Petition") (ECF No. 1). The Court referred the matter to the Honorable Shaniek M. Maynard, United States Magistrate Judge, who issued a Report and Recommendation recommending that the Petition be DENIED. (ECF No. 30). Petitioner filed an objection, ("Objs.") (ECF No. 31), and Respondents Florida Commission on Offender Review (FCOR) and Mark S. Inch (collectively, "Respondents") responded to the Objections ("Objs. Resp.") (ECF No. 32). The matter is now ripe for review. As set forth below, the Court **ADOPTS** the R&R.

**I.    BACKGROUND**

On March 17, 1992, a jury found Petitioner guilty of the murder of his fiancée's 22-month-old child. ECF No 6 at 2. The Indictment charged Petitioner with First Degree Murder, specifically that Petitioner "did unlawfully, from a premeditated design, to effect the death of a human being, to wit: [minor victim], age 22 months, did kill by inflicting blunt trauma to the head

of [minor victim], in violation of Florida Statute 782.04(1)(a)." ECF No. 14-4 at 12. Petitioner was sentenced to a term of natural life with a 25-year minimum mandatory sentence. *Id*. at 10.

After being interviewed by a hearing officer, a panel of commissioners met and established Petitioner's presumptive parole release date (PRRD) as August 1, 2046. *Id*. at 18–19. Petitioner sought administrative review of the PRRD decision, and FCOR found no reason to modify the PRRD. *Id*. at 183. After exhausting state court remedies, Petitioner filed the instant Petition for a writ of habeas corpus. ECF No. 1.

**II.     LEGAL STANDARD**

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

However, a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting

*Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992))).

When the objecting party has improperly objected, or failed to object, to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition; *see Lopez v. Berryhill*, No. 1:17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge must "evaluate portions of the R & R not objected to under a clearly erroneous standard of review").

## III.  DISCUSSION

The instant Petition alleges that in establishing his PRRD, the FCOR treated Petitioner more harshly than another inmate, Catherine Freeze, who was also convicted of murdering a child. ECF No. 14-4 at 208.  The FCOR gave Freeze a PRRD resulting in 34 years of imprisonment while Petitioner was given a PRRD resulting in 55 years of imprisonment.  ECF No. 6 at 5–8.  And, Petitioner argues that this "disparate treatment" violates the Equal Protection Clause.  *See generally* Pet.

Generally, to establish a classic equal protection claim, an inmate must demonstrate "that '(1) he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)).  Yet, the Supreme Court has also recognized "class of one" equal protection claims where a plaintiff asserts that he was irrationally discriminated against on an individual basis, rather than as a member of a particular group. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To state a claim of equal protection as a "class

of one," a plaintiff must allege that (1) he is similarly situated to (2) "comparators [who are] prima facie identical in all relevant respects," and that (3) defendants have intentionally treated him differently, (4) without any rational basis. *See Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). Here, Petitioner brings a "class of one" equal protection claim.

As set forth in the R&R, Magistrate Judge Maynard recommended the Court deny the Petition. R&R at 19. Magistrate Judge Maynard found that Petitioner's equal protection claim lacks merit for two reasons—namely, Petitioner fails to establish that: (1) he and Freeze are similarly situated; and (2) there is no rational basis for his longer PRRD compared to that of Freeze. *Id*. at 18.

Petitioner objects to both of Magistrate Judge Maynard's findings. First, Petitioner objects to Magistrate Judge Maynard's finding that Petitioner and Freeze are not similarly situated. Objs. at 1–6. Specifically, Petitioner argues that Magistrate Judge Maynard "erroneously accepted FCOR's *post hoc* rationalizations for the disparate treatment." *Id*. at 3. And, Petitioner generally disagrees with the R&R's conclusion that he and Freeze are not similarly situated. *Id*. at 1–6. As discussed below, the Court disagrees with Petitioner.

"To be 'similarly situated' the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn*, 618 F.3d 1240, 1264 (11th Cir. 2010) (internal quotation marks and emphasis omitted). The Eleventh Circuit has frequently noted that "the 'similarly situated' requirement must be rigorously applied in the context of 'class of one' claims." *Leib v. Hillsborough Cnty. Pub. Transp. Com'n*, 558 F.3d 1301, 1307 (11th Cir. 2009) (citing *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1275 (11th Cir. 2008)). "The reason that there is a similarly situated requirement in the first place is that at their heart, equal protection claims, even class of one claims, are basically claims of discrimination." *Griffin Indus., Inc. v. Irvin*, 496 F.3d

4

1189, 1207 (11th Cir. 2007*)* (quotation omitted). "To maintain this focus on discrimination, and to avoid constitutionalizing every state regulatory dispute, we are obliged to apply the 'similarly situated' requirement with rigor." *Id*. Thus, "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause." *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987); *Campbell*, 434 F.3d at 1314. In evaluating the similarly situated requirement, the court looks at the state action "in light of the full variety of factors that an objectively reasonable governmental decisionmaker would have found relevant in making the challenged decision." *Griffin*, 496 F.3d at 1203.

Here, the R&R identified several differences between Petitioner and Freeze, supporting the finding that Petitioner and Freeze are not similarly situated. R&R at 15. First, the R&R recounted the differences between Petitioner and Freeze:

> The manner in which Petitioner and Ms. Freeze murdered their victims is different. According to the Indictment, hearing officer's report, and Commission's decision, Petitioner killed his victim by "inflicting blunt trauma" to the head of a 22-month-old child. DE 14-2 at 9; DE 14- 2 at 2 ("The injury was consistent with the child either being kicked or stomped in the head."). The child's mother – Petitioner's girlfriend – woke to find her child outside lying in the dirt. DE 14-2 at 2. The child sustained over 70 abrasions, had multiple contusions and a fractured skull, and died of severe head injuries. *Id*. at 2, 5. Conversely, inmate Freeze shook her 18-month-old child because the child began crying and bit her while Freeze was arguing with her boyfriend. DE 14-4 at 208. Freeze shook the child until he began to vomit up a piece of pizza he had just eaten. *Id*. When the child went limp, she tried to revive him by hitting him on the back to dislodge the pizza and splashing water on him. *Id*. She then sent her boyfriend's 8-year-old son to the manager's office to get help. *Id*. The child was taken to the hospital but ultimately died from Shaking Child Syndrome. *Id*. During her parole interview, Freeze said "she lives with what happened everyday of her life" and "if she had the education she does now, she would have understood what she did was wrong." *Id*. at 209.

*Id*. at 15–16.

The R&R then concluded that "Petitioner and inmate Freeze are not similarly situated when it comes to the brutal and heinous nature of their crimes." *Id*. at 16. As the R&R notes, "[t]he

5

record suggests Petitioner inexplicably kicked and/or stomped a child's head in the middle of the night and left the child outside in the dirt. In contrast, inmate Freeze shook a child in a manner that caused death, but also tried to revive the child and tried to find others to assist him. Given this significant difference, the two inmates are not similarly situated, and Petitioner fails to state a class of one equal protection claim." *Id*.

Petitioner argues that Magistrate Judge Maynard disregarded Freeze's separate conviction for child abuse and her "continual pattern of horrendous physical abuse towards her child." Objs. at 6. Petitioner also generally argues that Freeze's murder of her child was more violent than described. *Id*. at 5 ("Ms. Freeze's child was killed by whiplash shaken infant syndrome, caused by Ms. Freeze's violent shaking of the child, which crushed his brain and caused respiratory failure."). Yet, even considering Freeze's pattern of child abuse, the Court disagrees with Petitioner that he and Freeze are similarly situated.

As discussed in the R&R, Petitioner "was convicted of one crime (murder) which, according to the Third District Court of Appeal, resulted in 'two extremely severe skull fractures' that 'would have required at least two strong blows with a blunt object[.].' *Helton*, 641 So.2d at 148-49. Additionally, '[a] portion of the child's brain had been pressed through one of the skull fractures, and the child had bled extensively between the skull and the scalp, resulting in the perception that the back of the child's head was soft.' *Id*. at 149. The 'degree of force involved would have been equivalent to a fall from a three story building, or being struck by a car going 30 miles per hour.' *Id*."

While Petitioner and Freeze both committed heinous act, it cannot be said that the two are similarly situated. First, the manner in which Freeze shook and killed her child is not similarly situated to the way Petitioner stomped a child's head in the middle of the night and left the child

6

outside in the dirt.  And, importantly, "Freeze attempted to get help for the victim and expressed remorse while Petitioner attempted to cover up the crime."  R&R at 17.  The Court agrees with Magistrate Judge Maynard's conclusion that Petitioner and Freeze are not similarly situated.  Accordingly, the Court overrules Petitioners objection.

Next, Petitioner briefly objects to Magistrate Judge Maynard's finding that the Government had a rational basis to treat Freeze and Petitioner differently.  Specifically, Petitioner "objects to the Magistrate Judge's recommended rulings on whether [Petitioner] has made out a 'class of one' equal protection claim *and whether there is a rational basis for FCOR's disparate treatment*."  Objs. at 6 (emphasis added).  This is the sole time Petitioner mentions the term 'rational basis' in his objections.  However, this argument is not a proper objection because it fails to "specifically identify the portions of the proposed findings and recommendation" that Petitioner disputes.  *Macort*, 208 F. App'x at 783.  A blanket assertion that Petitioner disagrees with the R&R's conclusion will not do.  At no point in the Objection does Petitioner dispute any factual finding or portion of the R&R's analysis regarding rational basis.  *See generally* Obj.  Accordingly, the Court reviews Magistrate Judge Maynard's findings for clear error.

The Court agrees with the R&R's findings that "assuming *arguendo* that Petitioner and Freeze are similarly situated, Petitioner fails to establish that there is no rational basis for his longer PRRD compared to that of inmate Freeze."  R&R at 18.  Namely, "it does not appear that Freeze deliberately intended to kill her child by shaking him, while the evidence in Petitioner's case strongly suggests a deliberate act.  Moreover, as previously discussed, the evidence in Petitioner's case suggests he tried to conceal his crime while Freeze endeavored to get help and later expressed remorse."  *Id*.  These facts, which are germane in determining parole, provide a rational basis for

7

the difference in Petitioner's PRRD as compared to that of Freeze. The Court finds no clear error with Magistrate Judge Maynard's findings.

### IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability shall issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make such a showing, an applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation omitted), or that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Nor has Movant raised issues that reasonable jurists would find debatable. A certificate of appealability is not appropriate here.

### V. CONCLUSION

UPON CONSIDERATION of the Petition, the R&R, the Objection, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Magistrate Judge Maynard's R&R (ECF No. 30) is ADOPTED. Petitioner's Objection (ECF No. 31) is OVERRULED, and the Petition (ECF No. 1) is DENIED.

The Clerk of Court is INSTRUCTED to CLOSE THIS CASE. All outstanding Motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 31st day of May 2023.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record